Caleb ALDERMAN; Barbara Alderman; Alaska Guestours, Inc., dba Fourth Avenue Theater Trolley Tours, Appellants,

v.

IDITAROD PROPERTIES, INC., dba Fourth Avenue Theatre, Appellee.

No. S–10975.

Supreme Court of Alaska.

Dec. 30, 2004.

Robert C. Erwin, Erwin & Erwin, LLC, Anchorage, for Appellants.

Walter T. Featherly and Teresa S. Ridle, Patton Boggs LLP, Anchorage, for Appellee.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

*OPINION*

CARPENETI, Justice.

## I. INTRODUCTION

This appeal arises out of a failed business venture between Iditarod Properties and the Aldermans. In 2001 we affirmed a judgment for trademark infringement against the Aldermans, but we vacated the portion of the judgment allowing Iditarod to recover unpaid rent. Iditarod subsequently brought suit against the Aldermans in superior court seeking to recover the unpaid rent, and it prevailed on its claim following a bench trial. The Aldermans appeal the decision of the superior court granting Iditarod recovery for unpaid rent, attorney's fees, and prejudgment interest. We affirm the judgment and the award of prejudgment interest, but we reverse the award of enhanced attorney's fees.

## II. FACTS[1] AND PROCEEDINGS

Robert Gottstein, the sole shareholder of Iditarod Properties (Iditarod), is the owner of the Fourth Avenue Theatre, an historic building in downtown Anchorage. In 1995

---

1. These facts are taken from *Alderman v. Iditarod Props., Inc.*, 32 P.3d 373 (Alaska 2001).

the Aldermans[2] obtained a permit to park their trolley in front of the Fourth Avenue Theatre, and they entered into an oral agreement with Gottstein under which Iditarod employees sold trolley tour tickets in the theater's gift shop and the Aldermans rented the theater ticket booth and office space in the theater's basement. The arrangement survived until 1997 when numerous conflicts between Iditarod and the Aldermans resulted in the Aldermans moving to an office space next door to the theater. After moving, the Aldermans registered and operated their trolley tour under the name "Fourth Avenue Theater Trolley Tours," which prompted Iditarod to file suit against the Aldermans for trade name infringement.

Jury trial began in May 1999. After the close of evidence Superior Court Judge Brian C. Shortell granted Iditarod's motion to amend its pleading to add a cause of action for breach of the oral lease agreement. The jury found that Iditarod owned the trade name "Fourth Avenue Theatre," that the Aldermans had infringed on that trade name, that the Aldermans violated the rental agreement by failing to pay Iditarod fifteen percent of the revenues from the trolley tickets sold at the theater, and that the Aldermans owed Iditarod $13,924.05 for unpaid rent.

We decided *Alderman v. Iditarod Properties, Inc.* in 2001.[3] We affirmed the trial court's judgment that the Aldermans infringed on Iditarod's trade name, "Fourth Avenue Theatre," and its award of enhanced attorney's fees to Iditarod.[4] However, we vacated the judgment for unpaid rent because we found that the Aldermans had suffered substantial prejudice because Iditarod unduly delayed pleading the breach of contract claim until after the close of evidence.[5] On January 14, 2002 Iditarod filed a new complaint against the Aldermans seeking damages for the breach of the agreement to pay rent.

The Aldermans moved for summary judgment, arguing that Iditarod's claim was barred by *res judicata* and the applicable statute of limitations. The superior court denied the motion, ruling that Iditarod's claim was not barred by *res judicata* because our 2001 decision was not a ruling on the merits and because the action for rent was "fundamentally different" from the action for trademark infringement. The court found that the cause of action arose prior to August 7, 1997, and that the action was therefore timely because the applicable statute of limitations was six years under the former AS 09.10.053.[6]

Trial commenced on November 15, 2002. Iditarod offered into evidence the testimony of Robert Gottstein and the prior sworn testimony of Caleb Alderman, Barbara Alderman, and Francis Gallela, the last over the Aldermans' objection. The Aldermans offered into evidence the testimony of Caleb Alderman, the corporate income tax returns of Alaska Guestours,[7] and receipts of trolley ticket purchases.

The superior court entered judgment in favor of Iditarod on November 21, 2002. The court found that the Aldermans had entered into an oral contract with Gottstein whereby they agreed to pay fifteen percent of Alaska Guestours' gross revenue to Iditarod Properties and/or Gottstein. In determining how rent was calculated, the court relied on the Aldermans' prior sworn testimony, the prior sworn testimony of Francis Gallela, and the Aldermans' tax returns. The court found that the Aldermans were obligated to pay $24,920.55 in rent, but it offset this amount by $11,817 which was retained by Gottstein from ticket sales from the 1997 season. Accordingly, it ordered the Aldermans to pay Gottstein the balance of $13,103.55.

2. The Aldermans, and their counsel, have variously spelled their name "Alderman" and "Aldeman" throughout this litigation. We use the former spelling, which represents that used in our earlier published opinion in this case.

3. 32 P.3d 373 (Alaska 2001).

4. *Id.* at 398.

5. *Id.* at 394–97.

6. The former statute, AS 09.10.050, was amended effective August 7, 1997 when AS 09.10.053 was enacted. Ch. 26, §§ 3–4, SLA 1997.

7. Alaska Guestours is the name of the Aldermans' trolley business.

Iditarod sought to recover its; full attorney's fees accruing from the date of the 1999 superior court judgment. Iditarod claimed that it had incurred $61,266.25 in attorney's fees, an amount which included fees for all work after the first trial, including appellate work. The Aldermans opposed this motion. The court awarded Iditarod $18,170 in attorney's fees under Alaska Civil Rule 82, an amount which represented fifty percent of Iditarod's actual fees for the 2002 trial, excluding the post–1999 appellate work. The court enhanced the fee award because the Aldermans had appealed the 1999 judgment on the grounds that they were denied the opportunity to present evidence in their defense but then failed to introduce any new evidence at the 2002 trial; because Iditarod made an offer of judgment that the Aldermans rejected; and because the Aldermans' defenses were generally weak. The Aldermans' motion for reconsideration on this issue was denied.

The court ordered the Aldermans to pay $18,170 in attorney's fees, $582.29 in costs, and $1,235.34 for the remainder owed for unpaid rent,[8] for a total judgment of $19,987.63. The Aldermans appeal on several grounds. They claim that the superior court erred in denying their motion for summary judgment on the grounds that Iditarod's suit was barred by *res judicata* and the applicable statute of limitations, in admitting the prior sworn testimony of Francis Gallela, in awarding enhanced attorney's fees, and in calculating the amount of prejudgment interest.

---

8. The amount owing for rent was so low because the Aldermans had previously paid to Iditarod $13,924.05 in rent and $1,766.45 in accrued interest, and this sum was subsequently deposited with the court pending the outcome of trial.

9. *See State, Dep't of Commerce & Econ. Dev., Div. of Ins. v. Schnell*, 8 P.3d 351, 359 (Alaska 2000) (determination of whether action is barred by *res judicata* is question of law); *Jenkins v. Daniels*, 751 P.2d 19, 21 (Alaska 1988) (determination of which statute of limitations applies is question of law).

10. *John's Heating Serv. v. Lamb*, 46 P.3d 1024, 1031 (Alaska 2002).

## III. STANDARD OF REVIEW

■ A trial court's determinations whether an action is barred by *res judicata* or the applicable statute of limitations present questions of law, which we review *de novo*.[9] The determination of the date on which a cause of action accrued is a factual finding.[10] Such factual findings are reviewed for clear error.[11]

■ A determination regarding the admissibility of evidence is a matter within the discretion of the trial court, and its rulings will not be disturbed absent an abuse of discretion.[12] If the admissibility of evidence turns on whether the trial court applied the correct legal standard, we review the court's decision using our independent judgment.[13]

■ We review an award of attorney's fees for an abuse of discretion, which we will find only if, after a review of the entire record, we are left with a definite and firm conviction that the trial court erred in its ruling.[14] If the award of attorney's fees requires interpretation of the Alaska Civil Rules, we apply our independent judgment.[15] The date when prejudgment interest begins to accrue is a question of law which we review *de novo*.[16]

## IV. DISCUSSION

### A. The Action To Recover Rent Is Not Barred by *Res Judicata*.

■ The Aldermans argue that Iditarod's action to recover rent is barred by *res judicata* because Iditarod should have raised the claim at the first trial but did not proper-

---

11. *Dodson v. Dodson*, 955 P.2d 902, 905 (Alaska 1998).

12. *Hawley v. State*, 614 P.2d 1349, 1361 (Alaska 1980).

13. *Landers v. Municipality of Anchorage*, 915 P.2d 614, 616 n. 1 (Alaska 1996).

14. *Alderman v. Iditarod Props., Inc.*, 32 P.3d 373, 380 (Alaska 2001).

15. *Id.*

16. *Liimatta v. Vest*, 45 P.3d 310, 313 (Alaska 2002).

ly do so.[17] The doctrine of *res judicata* " 'prevents a party from suing on a claim which has been previously litigated to a final judgment by that party.' "[18] And, as we stated in *Plumber v. University of Alaska, Anchorage*,[19] "*res judicata* bars not only relitigation of the same cause of action, but also new claims arising from the same transactions as those in the first suit."[20] When determining whether two claims are part of the same cause of action, we look to the transaction out of which the claims arose, not the legal theories asserted.[21] We exercise pragmatism in making this determination and consider "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage."[22]

The actions for trademark infringement and breach of an oral rental contract are separate and distinct causes of action. Each action required proof of different facts, arose out of a separate and distinct injury, and caused a separate and distinct harm. The cause of action for trademark infringement arose when the Aldermans began using Iditarod's trade name, "Fourth Avenue Theatre," in their trolley tours,[23] while the cause of action for unpaid rent arose when the Aldermans failed to pay rent as agreed. Al-

though both causes of action were precipitated by the breakdown in the parties' business relationship, either cause of action could have been brought had the factual circumstances underlying the other cause of action never occurred. Because the two causes of action arose out of separate transactions, we find that Iditarod's action to recover rent was not barred by *res judicata.*

**B. The Action Is Not Barred by the Statute of Limitations.**

■ The Aldermans also argue that Iditarod's 2002 suit to recover rent was barred by the statute of limitations. They contend that, because the cause of action accrued after August 7, 1997, it was subject to a three-year statute of limitations rather than the six-year period used by the superior court.[24] Iditarod contends that the cause of action accrued in June or July 1997 because the Aldermans failed to pay rent for those months. Accordingly, they argue that the action is governed by the six-year statute of limitations period applicable under former AS 09.10.050. Iditarod argues in the alternative that, even if the cause of action was subject to a three-year statute of limitations, the action is saved by Alaska's statutory savings clause. Because we find that Alaska's statutory savings clause applies, we need not review the superior court's factual find-

**17.** At oral argument, Iditarod argued that the Aldermans waived this argument because it was not listed in their statement of points on appeal. However, the Aldermans did raise this claim before the trial court, they fully briefed the issue to this court, and we may effectively address it without the need to review untranscribed portions of the electronic record. Accordingly, we find that the Aldermans' failure to include the issue in the statement of points on appeal does not bar consideration of the issue. *See* Alaska R.App. P. 204(e) ("The appellate court will only consider points included in the statement [of points on which the appellant intends to rely in the appeal], and points that the court can address effectively without reviewing untranscribed portions of the electronic record."). *See also Native Vill. of Eklutna v. Bd. of Adjustment for Municipality of Anchorage*, 995 P.2d 641, 646 (Alaska 2000) (review of issue on appeal was not precluded when all relevant portions of electronic record were transcribed, appellant raised issue before superior court, and issue was fully briefed on appeal).

**18.** *Dixon v. Pouncy*, 979 P.2d 520, 523 (Alaska 1999) (quoting MOORE'S FEDERAL PRACTICE § 131.10[1][a] (3d ed. 1997)).

**19.** 936 P.2d 163 (Alaska 1997).

**20.** *Id.* at 166.

**21.** *Tope v. Christianson*, 959 P.2d 1240, 1244 (Alaska 1998).

**22.** *McElroy v. Kennedy*, 74 P.3d 903, 908 (Alaska 2003); *see also* RESTATEMENT (SECOND) OF JUDGMENTS § 24 (1982).

**23.** *Alderman v. Iditarod Props., Inc.*, 32 P.3d 373, 379 (Alaska 2001).

**24.** For causes of action accruing on or after August 7, 1997, the statute of limitations for breach of contract is three years. AS 09.10.053. If the cause of action accrued before August 7, 1997, the statute of limitations is six years. Former AS 09.10.050. See ch. 26, §§ 3–4, SLA 1997.

ings regarding when the cause of action accrued.

Alaska's statutory savings clause, codified in AS 09.10.240, provides that, if a judgment on a particular cause of action is reversed or dismissed on appeal, and the cause of action was originally commenced within the time prescribed, the losing party may commence a new action on the same grounds within one year of the reversal or dismissal. Alaska Statute 09.10.240 applies to all actions that are dismissed at the trial or appellate level other than those dismissed on their merits.[25]

Iditarod's action to recover rent was originally filed as an amendment to a complaint for trademark infringement in May 1998, making it timely under either the three-year or six-year statute of limitations. We did not dismiss the judgment for rent on its merits, but because we were concerned that allowing Iditarod to amend the complaint after the close of evidence might have caused prejudice to the Aldermans.[26] Because Iditarod's original action was timely, and because we did not vacate the judgment on the merits, we conclude that AS 09.10.240 applies.[27] Iditarod's second action to recover rent, filed less than one year after the judgment was vacated, was timely under AS 09.10.240. The action was not barred by the statute of limitations.

## C. Any Error in Admitting the Prior Sworn Testimony of Francis Gallela Was Harmless.

At the 1999 trial, the Aldermans called Francis Gallela as an expert witness to prove the economic damages suffered by the Aldermans due to Iditarod's alleged interference with their business. At the 2002 trial, Judge Christen allowed Iditarod to read into evidence Gallela's prior sworn testimony that

had been given as part of an offer of proof. In the portion of testimony that was offered into evidence, Gallella stated that Caleb Alderman had told Gallela that the rental agreement required the Aldermans to provide Iditarod with fifteen percent of Alaska Guestours's gross receipts, a statement that contradicted the Aldermans' position at the 2002 trial. At that trial, the Aldermans maintained that their rent agreement called for them to pay only fifteen percent of their ticket sales from locations on the Gottstein property, not fifteen percent of their gross revenues.

The Aldermans argue that the trial court erred in admitting Gallela's prior sworn testimony because it was hearsay and did not fall within an exception to the hearsay rule. Under Alaska Evidence Rule 801(c), hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered into evidence to prove the truth of the matter asserted." A statement is not considered hearsay if it is an admission by a party and is offered against that party.[28] Iditarod urges this court to hold that when a party puts a witness on the stand to prove a particular fact and the witness does so, the witness's testimony constitutes an adoptive admission by that party and is therefore not hearsay.

We need not reach this issue because, even if Gallela's testimony was admitted in error, it was harmless. The admission of evidence, even if erroneous, is harmless when there is no reasonable likelihood that the admitted evidence had an appreciable effect on the court's decision.[29] When determining whether an allegedly erroneous admission of evidence was harmless, we do our best to put ourselves in the position of the

25. *Smith v. Stratton,* 835 P.2d 1162, 1165 (Alaska 1992).

26. *Alderman,* 32 P.3d at 395–96.

27. We read AS 09.10.240 to apply to judgments that have been vacated as well as those that have been dismissed. As with an action that has been dismissed on grounds not related to its merits, when a judgment is vacated it is as if the judgment had never been entered and the parties are put in the same position they were in before the

entry of judgment. *See, e.g., Earthmovers of Fairbanks, Inc. v. State, Dep't of Transp. & Pub. Facilities,* 765 P.2d 1360, 1363 (Alaska 1988) (effect of reversal is vacation of that judgment, putting case back in same position as before judgment).

28. Alaska R. Evid. 801(d)(2).

29. *Crosby v. Hummell,* 63 P.3d 1022, 1028 (Alaska 2003).

trier of fact.[30] In this case, there is no reasonable likelihood that admission of Gallela's testimony would have had an appreciable effect on a reasonable trier of fact (here, the court was the trier of fact) because the financial records presented at the second trial,[31] the testimony of Robert Gottstein,[32] and substantial testimony from *the Aldermans* themselves at the first trial all supported the court's decision[33] and all were in conflict with the testimony of the Aldermans at the second trial.

### D. The Superior Court Erred in Awarding Enhanced Attorney's Fees to Iditarod.

■ The court awarded Iditarod $18,170 in attorney's fees, an amount which represented an enhanced fee award of fifty percent of Iditarod's actual attorney's fees. The court enhanced the award because the Aldermans failed to present new evidence on the issue of rent, they rejected Iditarod's reasonable settlement offers,[34] and they presented a weak defense. The Aldermans argue that this was an abuse of discretion.

Under Alaska Rule of Civil Procedure 82(b)(1), if an issue is contested and goes to trial, a prevailing plaintiff is entitled to recover as attorney's fees twenty percent of a judgment up to $25,000. The trial court has discretion to vary a fee award if it determines that variation is warranted because of, among other factors, the attorneys' efforts to minimize fees,[35] the reasonableness of claims and defenses pursued by each side,[36] vexatious or bad faith conduct,[37] and any other relevant equitable factors.[38] We reverse the award of attorney's fees because we find that the court erred in considering Iditarod's offers of judgment when awarding enhanced fees and because the findings that the Aldermans' claims were either unreasonable or brought in bad faith are not supported by the record.

#### 1. Iditarod's offers of judgment were not relevant under Civil Rule 82.

The superior court awarded Iditarod enhanced attorney's fees in part based on its finding that Iditarod had attempted to minimize its attorney's fees through pre-trial offers of judgment. On October 17, 2002 Iditarod offered the Aldermans and Alaska Guestours $900 to settle the case. The settlement offer was not accepted, and Iditarod subsequently incurred at least $9,000 in attorney's fees. The settlement offer did not lead to an award of attorney's fees under Rule 68, because the court found that the parties did not set a deadline for initial disclosures, a finding that Iditarod does not challenge on appeal.

Although the offers of judgment were reasonable attempts by Iditarod to minimize the attorney's fees of both parties, we have consistently held that it is error for a superior court to consider past settlement negotia-

30. *See Dobos v. Ingersoll,* 9 P.3d 1020, 1024 (Alaska 2000) (under harmless error test, we will put ourselves in position of jury to determine if reasonable people would have been affected by improperly admitted evidence in rendering verdict).

31. The evidence showed that the Aldermans paid fifteen percent of gross revenues for 1995 and 1996, their first two seasons of operation, and the superior court reasonably found that this strongly supported the conclusion that fifteen percent of gross revenues reflected the amount that the parties had agreed upon.

32. Mr. Gottstein testified that his agreement with the Aldermans was that they would pay him fifteen percent of the gross proceeds of the tour business as rent.

33. For example, while their testimony at the first trial was inconsistent, both Aldermans referred to "fifteen percent of gross receipts" at least once. Caleb Alderman testified at the first trial that he paid Gottstein "fifteen percent of gross [receipts]." Barbara Alderman testified that Gottstein proposed increasing the rent to thirty percent of gross receipts rather than the fifteen percent he had been receiving under their prior agreement.

34. Fees were not awarded under Civil Rule 68 because the parties did not set a deadline for the exchange of initial disclosures. Neither party raises this issue on appeal.

35. Alaska R. Civ. P. 82(b)(3)(E).

36. Alaska R. Civ. P. 82(b)(3)(F).

37. Alaska R. Civ. P. 82(b)(3)(G).

38. Alaska R. Civ. P. 82(b)(3)(K).

tions when awarding enhanced fees under Rule 82.[39] The only method by which fees may be enhanced for failure to accept an offer of judgment is found in Civil Rule 68.[40] If an offer of judgment fails due to a procedural defect, as is the case here, the superior court may not then penalize the offeree by awarding enhanced fees under Rule 82.[41] We reverse the award of enhanced fees because the award was at least partially based on Iditarod's offers of judgment under Rule 68.[42]

### 2. The Aldermans' defenses were not unreasonable.

■■■■ The superior court also awarded Iditarod enhanced attorney's fees because it felt that the Aldermans' defenses were weak. When a party has taken a legitimate position, it has not acted unreasonably for the purposes of Rule 82.[43] This case centered on the terms of an oral contract, about which neither party was able to produce definitive evidence. Caleb Alderman testified that the oral contract was for fifteen percent of sales generated at the Fourth Avenue Theatre and not fifteen percent of Alaska Guestours's gross receipts, although his testimony at the first trial had been inconsistent on this point. The prior testimony of Barbara Alderman, which was read into evidence, was somewhat less clear but tended to support the claim that the contract was for fifteen percent of sales made at the theater. Gottstein claimed that the contract was for fifteen percent of the gross receipts from the trolley tours.

Considering the conflicting testimony presented at trial, we cannot say that the Aldermans' defense was unreasonable. The superior court's finding appears to be based on Judge Shortell's characterization of the Aldermans' claims and defenses during the

### 3. There is no factual basis to support a finding that the Aldermans acted in bad faith or made misrepresentations to the court during the current litigation.

■■■■ Finally, the court stated that it awarded enhanced fees because the Aldermans appealed the 1999 judgment on the grounds that they were not given the opportunity to present new evidence but then failed to present any new evidence at the 2002 trial. This appears to be another way of saying that the Aldermans' appeal was brought in bad faith or that the Aldermans made misrepresentations to this court.

In the first appeal, we held that the Aldermans were prejudiced when Judge Shortell allowed Iditarod to assert a cause of action for unpaid rent after the close of evidence.[44] The Aldermans argued that the late addition of this claim prevented them from presenting evidence concerning the terms of the parties' oral rent agreement.[45]

At the second trial, the Aldermans submitted tax returns for Alaska Guestours for the years 1995–1997, as well as assorted receipts. The tax returns specified Alaska Guestours' gross receipts and rent expenditures for each year. Caleb Alderman testified that some of the rent expenses on Alaska Guestours' tax returns were related to the company trolley and van. He also testified that the parties' oral agreement specified that the Aldermans would pay Iditarod fifteen percent of ticket sales made at the theater and not, as Iditarod claimed, fifteen percent of all gross re-

**39.** *Van Dort v. Culliton,* 797 P.2d 642, 645 (Alaska 1990); *Doyle v. Peabody,* 781 P.2d 957, 962 (Alaska 1989); *Day v. Moore,* 771 P.2d 436, 438–39 (Alaska 1989); *Myers v. Snow White Cleaners & Linen Supply, Inc.,* 770 P.2d 750, 752–53 (Alaska 1989).

**40.** *Doyle,* 781 P.2d at 962; *Day,* 771 P.2d at 438–39; *Myers,* 770 P.2d at 752.

**41.** *Day,* 771 P.2d at 438.

**42.** *See Van Dort,* 797 P.2d at 645 (we have consistently reversed awards of attorney's fees based in whole or in part on improper consideration of past settlement negotiations).

**43.** *Marathon Oil Co. v. ARCO Alaska, Inc.,* 972 P.2d 595, 605 (Alaska 1999).

**44.** *Alderman v. Iditarod Props., Inc.,* 32 P.3d 373, 395 (Alaska 2001).

**45.** *Id.* at 394–95.

ceipts generated from the trolley. Clearly the Aldermans presented some new evidence, both testimonial and documentary, at the 2002 trial.

▇▇▇ The superior court also stated that the Aldermans may have acted in bad faith due to evidence that they had delayed the case by attempting to evade process, an apparent reference to the Aldermans' attempt to avoid Iditarod's judgment in the 1999 action. But conduct undertaken in "bad faith" for the purposes of Rule 82 must relate to conduct during the litigation, and not to actions taken during the underlying transaction or other litigation between the parties.[46] It was thus inappropriate to consider the Aldermans' alleged attempts to avoid judgment in another cause of action.

We conclude that the superior court erred in awarding Iditarod enhanced attorney's fees and remand this issue for imposition of Rule 82 attorney's fees without enhancement.

### E. The Superior Court Correctly Calculated Prejudgment Interest.

▇▇▇▇ The superior court awarded Iditarod prejudgment interest at a rate of 10.5% per annum to accrue from August 1, 1997, but excluding the period during which Iditarod was in possession of the judgment for unpaid rent. The right to prejudgment interest in an action for breach of contract accrues from the date of contractual breach.[47] The purpose of awarding prejudgment interest is to " 'compensate [a] plaintiff for the loss of use of the money from the date of injury until the date of judgment.' "[48] The Aldermans argue that the court's award of prejudgment interest gave Iditarod a double recovery and that Iditarod's right to interest accrued after August 1, 1997, claims which, if true, would both reduce the amount of inter-

est owed as well as change the rate at which interest would be calculated.[49] For the following reasons, we reject these arguments and affirm the award of prejudgment interest.

### 1. The award of prejudgment interest did not give Iditarod a double recovery.

The Aldermans argue that Judge Christen's award of prejudgment interest for the period of August 1, 1997 to May 10, 2000 granted Iditarod a double recovery because the Aldermans had already paid prejudgment interest for that period in accordance with Judge Shortell's order. The Aldermans correctly argue that prejudgment interest may not be awarded to the extent that it would give the plaintiff a double recovery.[50] However, Judge Christen correctly credited the Aldermans not only with the amount paid on the earlier judgment, but also the interest that they paid on the judgment. In addition, the Aldermans did not have to pay interest during the period of time that Iditarod had possession of the judgment. Thus, Iditarod did not receive a double recovery.

### 2. The Aldermans have waived all other claims concerning the computation of prejudgment interest.

▇▇▇ The Aldermans also argue that the superior court erred in ruling that Iditarod was entitled to receive prejudgment interest beginning on August 1, 1997. The Aldermans raise this issue for the first time on appeal.

▇▇▇ Absent plain error, we generally will not consider issues raised for the first

**46.** *Cole v. Bartels,* 4 P.3d 956, 961 n. 24 (Alaska 2000).

**47.** *K & K Recycling, Inc. v. Alaska Gold Co.,* 80 P.3d 702, 724 (Alaska 2003) (prejudgment interest runs from date claim accrues).

**48.** *Liimatta v. Vest,* 45 P.3d 310, 321 (Alaska 2002) (quoting *Am. Nat'l Watermattress Corp. v. Manville,* 642 P.2d 1330, 1343 (Alaska 1982)).

**49.** The former AS 09.30.070, which applies to causes of action accruing before August 7, 1997,

provided for a 10.5% rate of interest. Under the current AS 09.30.070, the statutory interest rate is three percentage points above the 12th Federal Reserve District discount rate in effect on January 2 of the year judgment is entered. *See* ch. 26, § 18, SLA 1997.

**50.** *See, e.g., Liimatta,* 45 P.3d at 321 (holding that prejudgment interest cannot be awarded if it would amount to double recovery).

time on appeal.[51] We may make exceptions for issues that are (1) not dependent on any new or controverted facts, (2) closely related to the appellant's trial court arguments; and (3) could have been gleaned from the pleadings.[52] Because the Aldermans' claim rests on a controverted fact—the date on which the cause of action accrued—and because there was no plain error in calculating the date from which prejudgment interest accrued, this argument has been waived. Finally, the Aldermans' argument that a different statutory rate of interest applies, an issue raised in the Aldermans' points on appeal but not argued before the trial court or in their opening brief before this court, is deemed abandoned.[53]

**51.** *Hoffman Constr. Co. of Alaska v. U.S. Fabrication & Erection, Inc.,* 32 P.3d 346, 355 (Alaska 2001).

**52.** *Id.*

**53.** *See In the Matter of H.C.,* 956 P.2d 477, 480 n. 7 (Alaska 1998) (citing *Kodiak Elec. Ass'n, Inc. v.*

## V. CONCLUSION

We AFFIRM the superior court's award of past-due rent and prejudgment interest in favor of Iditarod, but we REVERSE the award of enhanced attorney's fees and REMAND to the superior court to issue an award of attorney's fees in accordance with this opinion.

*DeLaval Turbine, Inc.,* 694 P.2d 150, 153 n. 4 (Alaska 1984) (issues raised in party's statement of points on appeal, but not adequately briefed, are considered abandoned)).